1

2

3

4

5            UNITED STATES DISTRICT COURT

6           EASTERN DISTRICT OF WASHINGTON

7  TRACY LACQUAYE,

                                 NO: 1:15-CV-3029-TOR

8               Plaintiff,

                                 ORDER GRANTING DEFENDANT'S

9      v.                         MOTION FOR SUMMARY
                                 JUDGMENT

10  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security

11  Administration,

12              Defendant.

13

14      BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 16 and 20).  Plaintiff is represented by D. James Tree.

16  Defendant is represented by Christopher J. Brackett.  This matter was submitted

17  for consideration without oral argument.  The Court has reviewed the

18  administrative record and the parties' completed briefing and is fully informed.

19  For the reasons discussed below, the Court grants Defendant's motion and denies

20  Plaintiff's motion.

1    JURISDICTION

2        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g);

3    1383(c)(3).

4    STANDARD OF REVIEW

5        A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

7    limited: the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9    1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

10   relevant evidence that "a reasonable mind might accept as adequate to support a

11   conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently,

12   substantial evidence equates to "more than a mere scintilla[,] but less than a

13   preponderance."  *Id.* (quotation and citation omitted).  In determining whether this

14   standard has been satisfied, a reviewing court must consider the entire record as a

15   whole rather than searching for supporting evidence in isolation.  *Id.*

16       In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner.  If the evidence in the record "is

18   susceptible to more than one rational interpretation, [the court] must uphold the

19   ALJ's findings if they are supported by inferences reasonably drawn from the

20   record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2    Commissioner must find that the claimant is not disabled.  20 C.F.R.

3    §§ 404.1520(b); 416.920(b).

4         If the claimant is not engaged in substantial gainful activities, the analysis

5    proceeds to step two.  At this step, the Commissioner considers the severity of the

6    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7    claimant suffers from "any impairment or combination of impairments which

8    significantly limits [his or her] physical or mental ability to do basic work

9    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11   however, the Commissioner must find that the claimant is not disabled.  *Id.*

12        At step three, the Commissioner compares the claimant's impairment to

13   several impairments recognized by the Commissioner to be so severe as to

14   preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15   §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16   severe than one of the enumerated impairments, the Commissioner must find the

17   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18        If the severity of the claimant's impairment does meet or exceed the severity

19   of the enumerated impairments, the Commissioner must pause to assess the

20   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance and supplemental security income benefits on October 4-5, 2011, alleging a disability onset date of January 1, 2005, amended to March 1, 2009. Tr. 19, 189-92; 193-207. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 128-30, 131-34, 139-43, 144-47. A hearing was held before an Administrative Law Judge on May 14, 2013. Tr. 34-65. The ALJ rendered a decision on July 22, 2013, finding Plaintiff disabled in December 2012, for purposes of supplemental security income benefits. Tr. 15-29.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through March 31, 2009. Tr. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2009, the amended alleged onset date. *Id.* At step two, the ALJ found that

Plaintiff had severe impairments, but, at step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment.  Tr. 22. The ALJ then determined that Plaintiff had the residual functional capacity to:

> [P]erform sedentary work with the following additional limitations. This individual can lift and carry 10 lbs. occasionally and less than 10 lbs. frequently, can stand or walk for 2 hours total in an 8-hour workday, and can sit for 6 hours in an 8-hour workday. She can frequently push or pull with the right lower extremity, such as for the operation of foot pedals. She can never climb ladders, ropes or scaffolds and all of the other postural limitations are occasional. She should avoid concentrated exposure to hazards such as heights and dangerous moving machinery. She has sufficient concentration to understand, remember and carry out simple repetitive tasks. She can work in proximity to an unlimited number of co-workers but cannot work in coordination with them. She can have occasional and superficial contact with the general public. She can interact with supervisors on an occasional basis and in this manner she can respond appropriately to supervisors. 20 CFR 404.1567(a) and 416.967(a).

Tr. 22-23.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work since the amended alleged onset date of March 1, 2009.  Tr. 26-27.  At step five, the ALJ found that prior to December 2012, Plaintiff could perform the representative occupations of assembler and semi-conductor bonder, and that such occupations existed in significant numbers in the national economy. Tr. 28.  The ALJ concluded that Plaintiff became disabled by application of the Grids (Medical-Vocational Rule 201.14), in December 2012, when she entered the age category "Closely Approaching Advanced Age".  *Id*.  Since Plaintiff was only

insured through March 31, 2009, disability insurance benefits were denied, but supplemental security income benefits were awarded.

The Appeals Council denied Plaintiff's request for review on December 22, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1-3; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff seeks disability insurance benefits from March 1, 2009, and supplemental security income benefits for the period from March 1, 2009 through December 9, 2012.  *See* ECF No. 16 at 2.  Plaintiff raises three issues for review:

1. Whether the ALJ committed reversible error by finding Plaintiff not credible;

2. Whether the ALJ committed reversible error in weighing the opinion evidence; and

3. Whether the ALJ committed reversible error by failing to properly consider SSR 83-20 and finding Plaintiff only disabled after December 2012.

*Id*. at 12.

## DISCUSSION

**A. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908; 416.927.  A

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R.

§§ 416.908; 416.927.  Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

As long as the impairment "could reasonably be expected to produce [the]

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms

"cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation

omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

must make a credibility determination with findings sufficiently specific to permit

[a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making

this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation

for truthfulness; (2) inconsistencies in the claimant's testimony or between his

testimony and his conduct; (3) the claimant's daily living activities; (4) the

claimant's work record; and (5) testimony from physicians or third parties

concerning the nature, severity, and effect of the claimant's condition.  *Id.*  If there

is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d

661, 672 (9th Cir. 2012) (quotation and citation omitted).[1]  The ALJ "must

specifically identify the testimony she or he finds not to be credible and must

explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246

F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff concedes the ALJ provided some reasoning to find Plaintiff not

credible, ECF No. 16 at 14, but argues that the ALJ made inadequate findings to

warrant an adverse credibility determination concerning her activities of daily

living.  ECF No. 16 at 14-18.  For the closed period at issue, the ALJ found

Plaintiff capable of sedentary work, with some additional limitations.  Tr. 22-23.[2]

The ALJ reasoned:

> Before the later onset date of December [ ], 2012, the claimant's self-
> reported activities reflect that she was capable of the RFC. In a Function
> Report on December 7, 2011, she stated that as hobbies and interests, she
> used the computer and read books "about 6-7 hr a day." She went outside
> "about 2-3 times a week." She shopped at stores once "every 2-3 weeks."
> (4E/4-5) She could do some housework including washing dishes, sweeping

---

[1] The Commissioner disputes this standard of review.  The Ninth Circuit recently

rejected the Commissioner's similar argument in *Burrell v. Colvin*, 775 F.3d 1133,

1136-37 (9th Cir. 2014), and that holding is binding on this Court.

[2] Plaintiff does not contest the ALJ's RFC findings concerning her physical

capabilities based on medical opinions that she could perform sedentary work with

some postural restrictions.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

floors and folding clothes (4E/3). At the hearing, the claimant stated that she last drove a car "2 to 3 months ago." She stated that she stopped driving because her husband had gotten a car with manual transmission (hearing testimony). This statement suggests that she is not so medically impaired that she cannot drive.

. . . .

A third-party Function Report by the claimant's spouse, Michael Lee LacQuaye, suggests that needing help with activities of daily activities was the claimant's lifestyle choice. This was before the established onset date. Mr. LacQuaye indicated that as of December 13, 2011 the claimant had "no problem" with activities of personal care (5E/2), contradicting the claimant's allegation that she required Mr. LacQuaye's help to get in and out of the shower and to get dressed. Mr. LacQuaye described that the claimant could prepare her own meals "daily" for "1 hour or more" and she could do "laundry & dishes" and chores for "most of the day every day." (5E/3) Mr. LacQuaye further described that the claimant could drive a car by herself for "2 or 3 days a week." (5E/4) Taken together, Mr. LacQuaye's report suggests a much higher level of functioning than that alleged by the claimant, at least before the later onset date of December [ ], 2012. Mr. LacQuaye's statements in 2011 are accorded some weight.

Tr. 23-24. These findings are supported by substantial evidence. The Court also rejects Plaintiff's subsequent argument buried later in her opening brief under an unrelated heading that argues her husband's testimony should not be used against her and that his testimony was misconstrued. ECF No. 16 at 22-24. The ALJ properly reconciled conflicting evidence as she was required. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.) Moreover, the ALJ thoroughly recited the medical evidence that also supported her finding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    that Plaintiff could work at the sedentary level.  Tr. 24-25.  No error has been

2    shown.

3        Plaintiff next claims the ALJ erred when she misconstrued what Plaintiff

4    actually reported about her use of a cane.  ECF No. 16 at 17.  The ALJ recognized

5    that Plaintiff's "use of a cane was not medically necessary."  Tr. 25.  But even

6    more important, Plaintiff answered the ALJ's question that she had only used a

7    cane for about a month before the May 14, 2013 hearing.  Tr. 47.  Plaintiff was

8    granted benefits for the year 2013, thus, any perceived error concerning her use of

9    a cane is harmless in this case.

10        In reply, Plaintiff contends the Commissioner inappropriately offers

11   "reasoning outside that given by the ALJ in his (sic) original decision, which

12   should be rejected as post-hoc rationalization."  ECF No. 21 at 3-8.  Yet, a careful

13   reading of the ALJ's decision does not support Plaintiff's post-hoc rationalization

14   argument.  First, Plaintiff contends the ALJ never reasoned that Plaintiff's

15   misrepresentation of her work history impacted her credibility.  *Id*. at 3.  On the

16   contrary, the ALJ specifically observed:

17           The claimant stated that after her mother passed away in 2008, she did not
             look for work because she was depressed. She continued to allege
18           depression as a disabling impairment at the time of the hearing in 2013.
             However, the claimant gave a different account to Laurie Jones, MSW
19           during a therapy session on August 7, 2012, when the claimant stated that
             she lost the Caregiver job "as a result of a felony conviction." (8F/7)
20           Inconsistent statements of the reason for stopping work erode some of the
             claimant's credibility.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

Tr. 25.  The ALJ's findings are supported by substantial evidence in the record.

Next, Plaintiff contends the ALJ never found that Plaintiff's back pain only recently began in 2012, "noting only that [Plaintiff] was not to begin PT until after the hearing.  ECF No. 21 at 5 (citing Tr. 24).   Again, Plaintiff is mistaken.  The ALJ resolved the discrepancies in the record concerning Plaintiff's varied allegations of back pain in the following manner:

> The claimant also described low back pain that began "a year ago," for which she would start physical therapy the week after the hearing.
> . . .
>
> The claimant testified to having low back pain for about one year. However, she was going to start physical therapy only after the hearing, even though she has been alleging back pain as a disabling impairment since the amended alleged onset date in 2009, or 3 years before the hearing. A physical exam on April 21, 2012 revealed muscle strength of "5/5 in the upper and lower extremities bilaterally, except for the right leg, which [was] 4/5." Muscle bulk and tone were both "normal." (5F/5) In spite of these benign findings, physical limitations in the right lower extremity have been incorporated in the RFC, after crediting some of the claimant's subjective complaints of swelling and weakness in the right leg.

Tr. 23-24.  These findings are supported by substantial evidence in the record.

Next, Plaintiff contends the ALJ did not reference Plaintiff's use of a computer and reading books in her reasoning.  Once again, Plaintiff is mistaken.  The ALJ made the following findings:

> Before the later onset date of December [ ], 2012, the claimant's self-reported activities reflect that she was capable of the RFC. In a Function Report on December 7, 2011, she stated that as hobbies and interests, she used the computer and read books "about 6-7 hr a day."  She went outside

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    "about 2-3 times a week." She shopped at stores once "every 2-3 weeks."
2    (4E/4-5) She could do some housework including washing dishes, sweeping
      floors and folding clothes (4E/3).

3    Tr. 23-24.  These findings are also supported by substantial evidence in the record.

4    A careful reading of the ALJ's findings shows specific, clear and convincing

5    reasons for discounting Plaintiff's credibility regarding her claim of total disability

6    during the time at issue.

7    **B. Opinion Evidence**

8    There are three types of physicians: "(1) those who treat the claimant

9    (treating physicians); (2) those who examine but do not treat the claimant

10   (examining physicians); and (3) those who neither examine nor treat the claimant

11   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

12   *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

13   Generally, the opinion of a treating physician carries more weight than the opinion

14   of an examining physician, and the opinion of an examining physician carries more

15   weight than the opinion of a reviewing physician.  *Id.*

16   If a treating or examining physician's opinion is uncontradicted, an ALJ may

17   reject it only by offering "clear and convincing reasons that are supported by

18   substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

19   "If a treating or examining doctor's opinion is contradicted by another doctor's

20   opinion, an ALJ may only reject it by providing specific and legitimate reasons

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d

2    821, 830-831 (9th Cir. 1995)).  Regardless of the source, an ALJ need not accept a

3    physician's opinion that is "brief, conclusory and inadequately supported by

4    clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

5    Cir. 2009) (quotation and citation omitted).

6        **1.  Opinions of Thomas Genthe, Ph.D. and Jan Kouzes, Ed.D.**

7        Plaintiff contends that on February 3, 2012, consultative examiner Thomas

8    Genthe, Ph.D. opined that Plaintiff was unable to work but her condition would

9    improve with 3-6 months treatment.  ECF No. 16 at 19; Tr. 348.  Plaintiff claims

10   she did not improve and therefore concludes that she should have been found

11   disabled in February 2012.

12       On September 25, 2012, Jan Kouzes, Ed.D., performed an examination and

13   assessment.  Tr. 371-75.  Dr. Kouzes rated Plaintiff's ability to perform basic work

14   activities, finding several "moderate" and five "marked" limitations.  Tr. 373.  Dr.

15   Kouzes did not find Plaintiff had any "severe" limitations, defined on the checkbox

16   form to mean the inability to perform the particular activity in regular competitive

17   employment.  *Id*.  Plaintiff's briefing attributes opinions of disability to Dr. Kouzes

18   that are not borne out by the record.  ECF No. 21 at 9 (claiming "Dr. Kouzes

19   ensuing September 2012 opinion confirmed that she continued to suffer disabling

20

impairments", but no such disability opinion was offered by Dr. Kouzes.  *See* Tr.

373).

With respect to Dr. Genthe, the ALJ found:

> Dr. Genthe further opined that the claimant's ability to understand, remember and carry out short, simple instructions was "good;" the ability to work with or near others without being distracted by them was "fair;" and the ability to interact appropriately with the public was "fair." (3F/5) In particular, Dr. Genthe assessed that the claimant's mental symptoms were "mild to moderately well managed with medications." (3F/5) Dr. Genthe's opinions are accorded some weight, as the restrictions he placed on the claimant's work capacity were limited in duration and they do not correspond to the excellent test results obtained from the mental status exam.

Tr. 24.  With respect to Dr. Kouzes, the ALJ observed:

> In a DSHS Psychological Evaluation on September 25, 2012, Jan Kouzes, Ed.D., rated the claimant's GAF score at 55 and opined that she has many "marked" mental limitations, including in the ability to perform activities within a schedule and to complete a normal work day or work week (7F /9). However, this opinion remain[s] unsupported by the consultative opinions of Thomas Genthe, Ph.D. (12F), or the third-party statements by the claimant's spouse, Mr. LacQuaye (5F).  Unlike Dr. Genthe, Dr. Kouzes is not an acceptable medical source under SSR 96-6p. Dr. Kouzes' opinions are accorded less weight.

Tr. 25-26.  While, acknowledging the conflicting opinions given by Dr.

Genthe and Dr. Kouzes, the ALJ made the following findings concerning state-

agency consultant Diane Fligstein, Ph.D.:

> With respect to mental impairments, the state-agency consultant, Diane Fligstein, Ph.D., opined on April 2, 2012 that the claimant had affective disorders and anxiety disorders, but she was "not significantly limited" or was only "moderately limited" in the major functional areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. In particular, Dr. Fligstein wrote that the claimant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

was "able to remember, understand and perform up to a 3-step task" and could "do SRT (simple repetitive tasks)." (7 A/11)

Opinions of the state-agency consultants, including Dr. Stevick and Dr. Fligstein, are accorded significant weight as expert-opinions within the meaning of SSR 96-6p. The state-agency consultants' opinions, expressed in April and May of 2012, are consistent with the totality of the medical records up to the established onset date of December [ ], 2012.

Tr. 25. The ALJ's findings are supported by substantial evidence in the record. The ALJ's RFC determination was consistent with these findings and, despite Plaintiff's argument to the contrary, no examining physician opined that Plaintiff was disabled within the meaning of the Social Security Act. No error has been shown.

### 2. **Opinion of Aaron Burdge, PhD.**

Aaron Burdge, Ph.D., conducted a DSHS review of medical evidence on October 15, 2012. Tr. 376. He reviewed two reports, Dr. Kouzes' September 25, 2012 report (Tr. 371-75) and what appears to be a single page client progress report from Yakima Neighborhood Health Services dated August 7, 2012 (Tr. 370). Tr. 376. Dr. Burdge opined that Plaintiff will qualify for SSI with an onset date of September 25, 2012, the date of Dr. Kouzes' report. *Id*. Plaintiff contends the ALJ erred by rejecting this opinion because "[t]here is simply no evidence to support the finding that [Plaintiff] experienced a deterioration of functioning after this point." ECF No. 16 at 22.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    The ALJ gave Dr. Kouzes' report less weight than Dr. Genthe's and had

2    accepted Dr. Fligstein's opinions.  The ALJ explained that Dr. Burdge's opinions

3    made on behalf of the state DSHS were not binding on the Social Security

4    Administration and were accorded less weight.  Having already discounted the

5    underlying report from Dr. Kouzes, the ALJ did not error by rejecting Dr. Burdge's

6    reviewing, non-examining opinion.  As explained below, the onset date coincided

7    with Plaintiff's change in age category which directed a finding of disability.

8    Thus, no error has been shown.

9    **C. Onset Date for Disability Finding**

10   Plaintiff argues that SSR 83-20 requires the ALJ to engage the services of a

11   medical advisor to determine her disability onset date.  ECF No. 16 at 25-29.  Only

12   when the "medical evidence is not definite" and "medical inferences" need to be

13   made does the ALJ need medical expert testimony in order to establish an onset

14   date.  *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.

15   1998) ("If the 'medical evidence is not definite concerning the onset date and

16   medical inferences need to be made, SSR 83-20 requires the administrative law

17   judge to call upon the services of a medical advisor and to obtain all evidence

18   which is available to make the determination.").

19   Here in contrast, the ALJ found Plaintiff could perform no more than

20   sedentary work for the period at issue.  Once Plaintiff turned 50 years old, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

limitation to sedentary work was itself sufficient for a finding of disability regardless of any other physical or mental limitation. The Grids directed a finding of disability and the ALJ did not err by finding her disabled when she became a person closely approaching advanced age. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. No medical inference was necessary to determine the onset date and thus, SSR 83-20 is inapplicable.

Defendant is entitled to summary judgment.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** November 4, 2015.



THOMAS O. RICE
United States District Judge